### FROHLICH v. INDEPENDENT GLASS CO.

1. SALES—GOODS—FAILURE TO DELIVER—DAMAGES.

   Where, after entering into a contract for the sale of glass, and before time for delivery, the sellers write the buyer that no specifications have been issued on account of the contract and will not be until a full settlement of the buyer's unpaid account is received at their office, referring to an account for glass sold during the preceding year, the statement is not a distinct, unequivocal, and absolute refusal to perform, within the rule that a renunciation of a contract by a party imposes on the other the obligation to take immediate steps to lessen his damage, and the measure of damages, on failure of the sellers to perform their contract, is the difference between the contract price of the glass and its market value at the time the sellers are bound to deliver, and not at the time of making the statement.

2. SAME.

   Nor is the damage lessened by the failure of the buyer to buy glass from the seller for cash during the period in which delivery may be made under the contract.

3. SAME—PERFORMANCE OF CONTRACT—EXCUSE FOR DEFAULT IN DELIVERY.

   Where, after entering into a contract for the purchase of glass, and before the time for its delivery, the buyer writes the sellers that he cannot use at any price any more of a particular brand of glass, describing only a small part of the glass made by the sellers, and "trust you will make the assign-

ments with standard tank factories whose produce is up to the usual standard of quality," his act in so doing is not a distinct, absolute, and unequivocal refusal to receive performance, justifying the seller's refusal to perform.

4. SAME.

A contention by the sellers, in an action for breach of the contract, that the refusal of the buyer to pay to them an indebtedness antedating the contract destroyed his credit and absolved them from the obligation to perform the contract sued on, is untenable, since nothing short of breach of contract or actual insolvency on the part of the buyer will excuse the seller from fulfilling the contract on his part.

5. ABATEMENT AND REVIVAL — GROUNDS OF ABATEMENT — WANT OF JURISDICTION.

Want of the trial court's jurisdiction because of the fraudulent use of its process is properly raised by plea in abatement.

6. SAME—WAIVER OF OBJECTION—RULING.

By pleading the general issue, after the overruling of his plea in abatement, defendant waives the objection to the jurisdiction of his person raised by the plea.

Error to Wayne; Mandell, J. Submitted March 1, 1906. (Docket No. 29.) Decided May 24, 1906.

Assumpsit by Simon Frohlich against the Independent Glass Company for breach of a contract of sale. There was judgment for plaintiff for less than the amount claimed, and he brings error. Reversed.

*Geer, Williams, Martin & Butler*, for appellant.

*Julian G. Dickinson* (*George P. Kirby*, of counsel), for appellee.

CARPENTER, C. J. Early in 1902 Edward Frohlich (plaintiff's son), doing business as the Edward Frohlich Glass Company, and defendant entered into a written contract whereby the latter agreed to sell, and the former to buy, upon 60 days' credit, 15,000 boxes of glass at a stated price; the same to be delivered at the convenience of defendant during the following months of

May and June. On the 21st of April, 1902, defendant wrote said Edward Frohlich Glass Company "that no specifications have been issued on account of your May and June contract, nor will they be until a full settlement of your unpaid account (for glass sold during the preceding year) * * * is received in this office." This indebtedness was not paid, and no glass was delivered. The cause of action was assigned to plaintiff, and he brought this suit to recover damages for the breach of said contract. He did recover in the court below a verdict and judgment for the amount of $3,450. He asks this court to reverse that judgment upon the ground that the jury, by the direction of the trial judge, applied an improper rule in measuring his damages.

The trial judge charged the jury that the measure of damages was the difference between the contract price of the glass and its market value on the 21st of April, 1902. (This was the day defendant notified the Frohlich Glass Company that it would not deliver the glass unless an old indebtedness was paid.) Plaintiff insists that the proper measure of damages was the difference between the contract price and the market value of the glass at the time when defendant was bound to perform its contract. (Defendant was bound to perform its contract June 30, 1902, and plaintiff's testimony tended to prove that the market price of glass was higher that day than it was on the 21st of April.) The plaintiff's contention is correct, unless it may be held that defendant's letter of April 21st changed the time for the performance of the contract. That letter did not change the time of performance unless it amounted to a renunciation of the contract on the part of defendant, and thereby imposed upon plaintiff's assignor the obligation to take immediate steps to lessen his damages by purchasing glass elsewhere. It is well settled that a statement made by a party to a contract before the time arrives for its performance cannot be considered a renunciation unless it is a "distinct, unequivocal, and absolute refusal to receive performance or to perform on his

own part." 2 Mechem on Sales, § 1087; *Wigent* v. *Marrs*, 130 Mich. 609; *Dingley* v. *Oler*, 117 U. S. 490. The statement in defendant's letter of April 21st that it would not perform its contract unless paid an old indebtedness then due was at most a conditional refusal. It was not a "distinct, unequivocal, and absolute refusal," and it had therefore no effect upon the contractual obligations of the parties to this suit. We are therefore of the opinion that the measure of damages was the difference between the contract price of the glass and its market price at the time the defendant was bound to deliver the same (viz., June 30, 1902) and that the charge given was erroneous.

To prevent any misapprehension we think it proper to say that it follows from our reasoning that another portion of the charge not heretofore referred to was also erroneous, viz., that part of the charge which permitted the jury to lessen plaintiff's damages because his assignor did not buy from defendant glass for cash during the months of May and June, 1902. Defendant contends that these errors were not prejudicial for several reasons:

*First.* That defendant accepted the proposition of plaintiff's assignor to purchase the glass in question "subject to strikes, fires and delays beyond our control," that plaintiff's assignor never assented to this condition, and that, therefore, there was no valid contract upon which this action can be maintained. We are persuaded that this contention is based upon an erroneous understanding of the testimony. We are unable, after diligent search, to find any testimony which supports it. Even the testimony introduced by defendant tends to prove that plaintiff's assignor did assent to this acceptance.

*Second.* Defendant contends that the following statement, viz.: "We also beg to advise you that we cannot use any more Barnesville glass (this describes only a small part of the glass made by defendant) at any price, and trust you will make the assignments with standard tank factories whose produce is up to the usual standard of

quality," contained in a letter written March 28, 1902, by plaintiff's assignor to defendant justified the latter's refusal to perform its contract. This statement did not justify defendant's refusal to perform its contract. It was clearly not a "distinct, absolute and unequivocal refusal to receive performance," and, under the reasoning of this opinion, had no effect upon the contractual obligations of the parties.

*Third.* It is insisted that the refusal of plaintiff's assignor to pay his old indebtedness destroyed his credit and absolved defendant from its obligation to perform the contract sued upon. We may answer this as we answered a similar contention in *F. W. Kavanaugh Manfg. Co.* v. *Rosen*, 132 Mich. 44:

"Nothing short of a breach of contract or actual insolvency would excuse (the defendant) from fulfilling the contract on its part."

*Fourth.* It is insisted that plaintiff's assignor "having supplied himself with the glass called for by his contract without showing any actual loss, suffered no damages." This contention may be answered by saying that the testimony warrants the inference, if it does not conclusively prove, that plaintiff's assignor did not supply himself with the glass called for by his contract.

*Fifth.* It is contended that the lower court never acquired jurisdiction because of a fraudulent use of its process. This question was properly raised by a plea of abatement. This plea was overruled, and defendant pleaded the general issue. By doing this, it waived the objection made in the plea of abatement. See *Griffin* v. *Wattles*, 119 Mich. 346.

The error heretofore pointed out was, in our opinion, prejudicial, and the judgment must therefore be reversed, and a new trial ordered.

MCALVAY, BLAIR, OSTRANDER, and MOORE, JJ., concurred.